Case number 1890, People v. James Amirante. Good afternoon, Your Honors. Dennis Dorney on behalf of James Amirante, the appellant. Good afternoon, Your Honors. Maura White on behalf of the people of the State of Illinois. Thank you. You may proceed when ready. Thank you very much, Your Honor. May it please the Court, Counsel for the State, Justices of the Appellate Court, First District, Fifth Division, it is my extreme honor to appear before Your Honors, and I extend my sincere appreciation for the opportunity to address this Court in oral argument. What happened in this case, and I was not the trial attorney, is that someone called 911. The 911 operator, or someone called 911 and hung up. 911 operator called back and spoke to someone, and a police officer was sent to that address. At that location, a female subject spoke to the police officer and then refused to sign a complaint, refused to allow an alleged injury to be photographed, and then successfully avoided all participation in the proceedings. The police, the police decided this case, quote, necessitated an arrest. And the police signed a complaint against Mr. Amiranti, and the police told, or had Mr. Amiranti come to the police station, called his father, brought him in, and the police arrested Mr. James Amiranti. Well, what other than the latitude of prosecutorial discretion, which you may be implicitly challenging or attacking, why would the non-cooperation of the so-called victim give comfort to the, necessarily to the defendant, since this, you've analogized it to a civil case in your brief, but it's not a civil case. Indeed. Because in a civil case, the rights belong to the parties. Here it belongs to the state and to the defendant. And the crime, if it's committed, is committed against the state, with the state having the discretion and not the victim. No, I fully agree with Your Honor, and if those were the isolated circumstances, I would not focus my argument entirely on that. When you're evaluating reasonable doubt claims, of course, it's the totality of the circumstances. These are simply circumstances. But there is a major premise which comes first, which I believe is conclusive. So I fully agree with the court that if, simply because the victim didn't sign or she could have been kidnapped and killed or something. Well, it's particularly so in certain kinds of crimes where the state may adopt the practice of not necessarily acquiescing to the expressed desires of the victim. Abuse cases, for example, where there may be fear or other psychological factors that may prevent a case from ever getting to court, if that were the control. Since we all agree on that, and I'm well familiar with your intellectual curiosity as an advocate, Mr. Doherty, why don't we move on to the issues that you think are significant in this context. Upon a plea of not guilty, there was a trial, an at-trial. The state called the responding police officer and played the nine-on-one thing. We don't even have to get to Crawford. Of course, with that line, the decision says that statements are non-testimony if they deal with emergencies. But that's the law. In any event, though, the decision here, and this is what the trial judge based his ruling on, the Dominguez case of Second District Appellate Court, which relied on the Davis case of the United States Supreme Court. Those cases do not say that the state can prove the corpus delecti of a criminal case by playing a tape. We don't have to get to Crawford in this case because the identity of the speaker in the purported example, except for Edwards, which allows for circumstantial proof. You know, what we're talking about here is what, when I went to law school, we talked about authentication, phone call authentication. I think Graham may still use that terminology. I don't know. But at any rate, you can establish the identity of a speaker through circumstances that show peculiar knowledge in the speaker that would limit her identity to that person who would have that knowledge. And the state argues here that you have her identifying the clothing, the birthday, the fact that she was on phones. And in Edwards, for example, they were able to use the fact that they found the ransom defendant in a phone booth exactly at the time that the call was made and so on. Why isn't that enough here? Well, Your Honor, to go to the content of the tape and say that that is the circumstantial evidence I think is a circular reasoning here. But she identifies herself as Rachel Witt. Yes, Your Honor. Mr. Stewart, I'm sorry. No, no, you do. You started talking about corpus delicti. What we have here is evidence which, if properly received, would be not an exception to the hearsay rule. Absolutely. So it would be as if this person was testifying in court as to what occurred. That would raise the question as being simply that of, as Justice Gordon refers to it, authentication. Indeed. Is it appropriate for the judge under those circumstances to say, yes, this person was the declarant. This person was the person on the telephone. And then we're able to look at all of the factors that the judge considered, including cited utterance. But we're looking at the fact that her phone was used during those periods of time, that she was on the telephone when the officer arrived there, that she gave the name, gave her name, identified herself at the time, and then testified somewhat consistently, at least in terms of the things that she referred to, to the same content that occurred in the telephone conversation. Now, there wasn't line-by-line coverage of each and every factor, but she was talking about the same incident that the caller was talking about, and there was no third person there. There was just Ms. Witt and her baby. And you could have subsequent authentication. Her attempt to move out would have perhaps presented a basis for inferring that she was the cohabitant. And I know you're fighting the notion that being the cohabitant can be the basis here for this battery, since it was not spelled out in the complaint. But it would also be a basis for inferring that she's a girlfriend. Well, it was admitted that he had a girlfriend, but in Dominguez, in the Dominguez case, the victim was called, and she was impeached with her tape. She said she looked wrong, and she didn't remember what happened. And she said, yes, that's my voice on the tape. Now, if you take a look at the Davis case, what the United States Supreme Court says is they simply say the caller was Michelle McCautry, called. So there had to have been a fact proven in evidence. The complaint wasn't there. Two police officers testified in the United States Supreme Court case. But in this case, Your Honors, don't retry this. The justification in a phone conversation is the equivalent of proving in evidence who the caller was. But what they did here – And that's the linchpin question here. Because once, as Justice Epstein points out, once we get past the question of whether we can consider Rachel Witt to be the caller, then we have to simply confront the question of whether it's an excited utterance. And at that point, obviously, we want to hear what you have to say about it. But during the course of the 9-11 call, it's not that far removed for the court – and this was a bench trial – to make that determination. We then have to confront the question of whether the same applies to the officer's testimony as to what he heard. And if we move in that direction, I think we might make some progress. And then maybe even confronting the ultimate issue of whether the content of that conversation in and of itself is incriminating. I agree, but I do believe that this case is a question of Illinois evidentiary law. I've sat on page 16 through 18 of our brief. I went back as far as I could. We start with a case at least 61 years old, Holliver v. O'Shea. This is real, simple, basic Illinois law. To render a testimony, telephone conversation, missionable, recognition of the voice of the person called is indispensable. There's additional cases right there. This is first-semester law school stuff. But, Mr. Gordy, 61 years ago, we didn't have the advantage of some of the items of evidence that were supplied by the state in this case as to when the phone conversation was incurred, whether they were able to call back the exact number that was used to make the phone call in the first place. So, really, you're talking about a standard that evolved before the technological advancements that we have today, which at least allows us and really requires us to revisit whether that's still a valid requirement. Incidentally, did the police officer who testified observe the cut on the thumb? He did. All right, well, that's, I'm not, that would also help towards establishing authentication, wouldn't it? Here is the law, which, indeed, I agree with your other, Justice Epstein, it has to be reversed if this decision is correct. Because, you see, the police officer could have been asked to identify the voice. The 9-1-1 lady, Christine Gonzalez, was asked a question across examination. Do you know who the caller is? No. Are you familiar with her voice? No. Do you know, Christine, what her voice sounds like? No. That's Illinois law. Now, even if you talk to somebody later, and the kidnapping case had a kinky key, there was a recognition of that guy's voice. It wasn't just the circumstantial evidence. But the circumstantial evidence also was helpful. But you can't take the circumstantial evidence out of the content of the tape, because that conflicts with the law. And we're a witness, and that would be the Palmaro case. And I did it not just in 1950, Hunter. I went to the 80s and 87s. Well, did the police officer refresh you? Did the police officer testify to the identity between the voice on the tape and the voice he heard from this woman who identified herself to him? No, he didn't. And I wouldn't be standing here. I wouldn't file a brief if he had. That's what's missing in the case. And that's what conflicts with Illinois evidentiary law, because the state attorney's office can't just take a tape and play the tape and say, Here, Judge, here's what the lady said. It's an exception to the hearsay rule according to the United States Supreme Court. But she described the cut in her tape, and he testified to the cut. There is no foundation for the admission of the tape. The officer doesn't know how the cut occurred. He wasn't there for that. The foundation for the admission of the tape is that the 911 operator supplies part of it by saying, This is an accurate copy of what I heard. All right? That's part A. Part B becomes the fact that when there was the hang-up, I redialed the number. I dialed back the number. And lo and behold, it was Ms. Witt who was the person that had that phone that was used to place the telephone call. Part C is when the officer arrives at the scene, he confronts Ms. Witt, who has a strikingly similar experience to that that was reported by the person on the tape and who also has the physical appearance of some mark that would be consistent to what was reported on the tape. And it is just as Gordon said to the fact that this woman is now in the process of moving out of the apartment. So, I mean, there are little dots to be connected. And the question that you raised isn't as simple as the one that you posit, because you want to focus in your argument on the fact that if some human being doesn't say, this is the voice I heard, the judge couldn't possibly consider that as a threat. You have to switch gears and ask, is this circumstantial evidence that Justice Epstein just enumerated for you sufficient to make the inference for purposes of authenticating the fact that it was Rachel Witt? I respectfully, it seems to me that that depends on the content of the tape. And there has to be some foundation. You have to ask, is there enough circumstantial proof to infer the authenticity of Rachel Witt's voice being on the tape? That's the only issue that you could posture. And you don't automatically lose by posturing that, but you save a lot of time. Of course, Your Honor. And I believe that's the issue. And I quoted that number one first. But here is the case which I wanted to quote from. This is a decision from this Court, this Honorable Court, where a witness merely presumes the identity of the other party, the conversation. Evidence relating to what the witness heard one party say is incompetent. Counsel, you're not facing the reality of the issue, at least as we see it. Because we're not talking. You finish it. The presumption that you're referring to, Mr. Doherty, is whether the presumption is based simply upon, I guess that's the person, or whether it's on consideration of all these circumstantial factors that I've tried to enumerate. And really, as Justice Gordon pointed out, confront that issue, if you would, rather than falling back on what I have to consider to be nondispositive sidestepping. I don't think that the circumstantial evidence is sufficient to prove that Rachel Witt is the speaker. She never signed a complaint. She refused to have this thing photographed. We don't know who she is. She cut the proceedings. The officer didn't say he knew her before. There is circumstantial evidence, of course, that she made a phone call and that the police came to her. But if you want to rely on hearsay, Mr. Amorami said he knows something totally different, and that she was saying something different. Well, the question is, who makes the decision? If there is circumstantial proof which, by its own quantification, justifies an inference that it's Witt, but there are also negative factors that go the other way, who decides what the inference, ultimate inference, should be? And what role do we, as a reviewing court, play in that? Your Honors, I don't think Your Honors retried cases, and the State is trying this case, and there's a variety of evidentiary methods of attempting to identify a person's voice. They did nothing. All right. That's the problem. Okay. Nothing. The judge didn't make a finding that that's reasonable. Mr. Daugherty, we're going to help you here. We heard what you said, and I'm not coming down on it one way or another. Let's move on to your next issue, which is the complaint, perhaps. Well, that's a no-brainer. It's very eclogical here. He's charged with family or household member in a complaint. The judge is a very good judge. Judge Greenblatt comes out and says, Oh, so it's a girl. Shared residence. He's not charged with that. It doesn't even mean if they live together. He's never charged with that, and he can't be found guilty of that, and that's the Pueblo case, which I argued in this courtroom 24 years ago, I believe. And the other circumstances, she didn't live there. She said she lived in Chicago. And so it wasn't even a shared residence. She might have been over there that day or something, but she said she didn't even live there. Mr. Hammer, I need to go over to her home. The police officer is in. She said she didn't live there. What about the process server's testimony that he went to two places, including? He couldn't find her. He actually stopped at her home. And the fact that she – didn't she give her address as being the same as the defendant? No, no. She said she lived in 1909 – or 909 West Addison in Chicago. That was her address. And I have these citations in the section of the brief. He lives at her address in Peloton. And what about the fact that she was moving a whole bunch of stuff out of that house? We don't know what she was moving, but she was moving some toys and some other stuff out of the house, indeed. It's certainly circumstantial evidence that she may have cohabitated. What if it's a five-year-old child? But I start with point one, he's not charged with this. So it's a corollary argument that the evidence even conflicts with it. But you can't convict a guy for something he's not charged with. You charge him for armed robbery, you can't go outside and find him guilty of kidnapping. Unless it's a lesser included. So I will turn it over to the prosecution. Unless the courts, Your Honors, have more questions. Are you standing on your brief as to whether hearsay complaint is sufficient? A complaint based on hearsay. I would stand on the brief in that regard. And if I've overlooked the emphasis, I do apologize here. I don't know where the police have a policy that they decide what to charge and what not to charge. It's really unprecedented. I've been a federal defense lawyer for 30 years. What do they do? What are the standards? What are the rules on that? Suburban police department says, you know what? This guy says somebody did some shoplifting here. They let him go. They don't want to, you know, it doesn't matter. We're going to sign a complaint and we're going to go find a guy and we're going to charge him with shoplifting. Or somebody pushed someone in a bar. Or somebody was smoking some marijuana somewhere. We think we need an arrest here. So these are all of the totality of the circumstances, and I appreciate the opportunity. Once again, I appreciate the opportunity. Are you not, I think, that it makes any difference. But are you totally critical of prosecutorial policies being adapted to various kinds of criminal charges where domestic abuse, for example, may have generated a policy of action by the prosecution, by the police, notwithstanding disclaimers by the victim subsequently? No, and I fully agree. And it's rather obvious that this is addressing a very serious issue, and that's domestic violence. We have repeated instances right over here at 555 West Harrison. People want to drop the case. The state says, well, we're going to go on the injuries. We're going to go on police reports. We're not going to just let this guy go. It makes abundant sense, and it is a policy decision. But in this particular case, it's just not really explained who makes the decisions. If it's a lieutenant or whatever, it's rather ad hoc, which adds to the totality of the circumstances. The state's attorney's office is playing the case. If you care less, I mean, it's a federally held law. You're supposed to identify the voice of this person. Okay. Thank you. All right. Thank you, Mr. Chairman. Thank you, Mr. Chairman. Good afternoon again, Your Honors.  Defendant's argument before this court challenges both the sufficiency of the state's evidence, and it also challenges the admission to certain pieces of evidence at trial. Could I interrupt you here? Because we have a question for you that we could use some clarification. What crime is being charged here in the phone call? With respect to the phone call, Your Honor? Yeah. A domestic battery is being charged. How is that? Where is that charge? How is that charge described? Where is it stated? With respect to the 911 tape, the caller in this case, Rachel Witt, identifies herself. No, no, but what does she say about the battery itself? She talks about that she was cut with a knife, that the offender had left the house. Did she say she was cut by the knife, or was it the toy? Or was she a doubtful? Did she say that he came in with a knife and that she got cut? That's exactly what she said. And the question that I have, which is related, is since we know that battery requires a knowing act, where in the evidence that was presented to the judge is the mechanism of the injury described from which someone can infer that there was a knowing act? Your Honor, actually I believe it was through Officer Morris' testimony. He testified in the defense case, and on the state's cross-examination, he told the court that the complaining witness, Rachel Witt, in this case, had told him that she had shot herself in the room, that the defendant came at her with a knife, came through the door that she was trying to close, and that she was injured as a result of a struggle that had ensued. Incidentally, was there an objection made to that officer's testimony on the basis of hearsay? There was no objection made. Your Honor, when did this injury occur? Did the injury occur before she ran into the bedroom, or after? The testimony from the officer indicates that this happened as she ran into the bedroom, she tried to close the door, the defendant had come at her with a knife, and then... The reason I ask that, because from what I read from this officer's testimony, he directly asked the victim, how did you get the cut? And her answer was, we've been fighting all day, which indicated, didn't give us any time frame as to whether it was how or when it occurred. Or even, the how is one of the main problems. With respect to the how, again, Your Honor, this struggle with the knife ensued, she testified after she had tried to shut herself into the room with her small child. She testified that this was after an argument that... But we don't get the point of, was he swinging the knife? That's not in the record. The record does not indicate exactly whether or not he was swinging with the knife. It specifically states, the officer says, that the defendant, according to the victim in this case, had come at her with a knife, that a struggle had ensued, and that she was cut. He testified that he had an opportunity to observe the cut on her finger that looked, in his opinion, to be fresh. And this, of course, wouldn't have been an excited utterance, because this was well after the event, and the officer arrives in there, and he's doing a question and answer with her. Your Honor, I would submit to the court that this actually is, that she was still under... Well, there's no testimony, even by the policeman, that it was an excited utterance. There's no finding by the court here that this was an excited utterance. All those findings were with regard to the tape. That's correct, Your Honor. So that if an objection had been made here, there would seem to be no reason not to grant the objection, not to exclude the evidence. And the question now is, to what degree does this hearsay, which can be still considered competent evidence, stand? And how long is it going to stand after the post-conviction is filed? Your Honor, you're correct that there was no objection with respect to the admission of the officer's testimony, both during the State's case in chief and as well as in the defendant's case in chief. However, if there had been an objection, the State submits that this absolutely could come in as an excited utterance. So that the same story can be repeated twice and the court can still find it's an excited utterance through the hearsay of the witness rather than through the direct testimony of the victim. And then even if we accept it, we have to sort of figure out whether he stabbed her or made a knowing or intentional move toward her, or whether somehow through some other mechanism she managed to receive this small mark on her, on the web of her, between her thumb and her hand. Well, as this Court is well aware under Jackson v. Virginia, on appellate review, we can't re-weigh the testimony or reconsider the evidence that was presented to the trial court. The trial court had the opportunity to hear all the testimony in this case. It had the opportunity to weigh the credibility of the witnesses, to observe their demeanor. But leaving credibility and demeanor aside, do the words uttered constitute proof, if accepted and found credible, of a knowing act? Your Honor, I submit to the Court that it does. More recently, under People v. Robinson that the State asked to have this Court consider, that was a situation in which an officer arrived to the scene. That was a situation where the victim stated that her boyfriend had, quote unquote, flipped out, that he had struck her, and the officer had the opportunity to observe a punch on the wall, and had the opportunity to also observe that the defendant's hand was bloody. He said he struck her. She said he struck her. That's correct, Your Honor. That's a description of the mechanism of the injury. That's a description of how the contact came into being. Where is that in this case? In this case, it comes in through Officer Morris' testimony that the defendant came at her with a knife and that she was injured. And the other testimony that the Court... No, he came into the room holding a knife. That's correct. And somehow she became injured. What if he came at her with a knife and she banged her hand against the wall in reaction? Would that be sufficient for a domestic veteran? No, Your Honor, I don't think that that would be sufficient for a domestic veteran. Well, that could have been equally inferable from what she said. He came at me. She could have ducked and cut herself. You see, I think, Ms. White, when you talk about the unquestioned principle that the trial judge is the person who is in the best position to judge the credibility of the witness, having seen the witness and the demeanor, that's completely beside the point of the question that I'm raising with all due respect. Because I am saying, let's assume that he found all the witnesses to be credible who testified for the prosecution. The question is, where have the elements of the offense been provided by that testimony, if believed? Your Honor, in addition to the testimony of the officer about the fact that there was a struggle that ensued, in addition to the fact that he testified that he observed her cut, there also is the circumstantial evidence the State would submit with respect to the defendant's intent. There had been a verbal altercation. She had tried to get away from him by closing the door. She testified that he pushed the door open, and he comes at her with a knife. So if he were charged with pushing the door open, there would be direct evidence that he had done that. That's correct, Judge. What's the consequence of an allocution that admits guilt? With respect to the... The defendant. Is the defendant then bound by his admission in his allocution? This Court, when reviewing the evidence on appeal, I would say no, that what the defendant says post-trial in his allocution is not necessarily going to be considered for purposes of whether or not the State met their burden in this case. However, Your Honor, I do think it is very significant when looking at the entire record, as this Court must consider... You can consider all that the record had with respect to the entire trial proceedings. And as the State's position in this case that the trial court obviously was the same when the case commenced as the sentencing judge, that court found in its finding that there was absolutely, quote-unquote, no doubt as to whether or not the domestic battery had occurred. And that's after he had an opportunity to hear all of the evidence. And as Your Honor pointed out earlier, during counsel's argument, connect the dots in this case. And Your Honor, that's exactly what the trial court did with respect to the finding of guilty for the charge of domestic battery. Well, the connect-the-dots reference was obviously as to the circumstantial evidence of the authentication of the phone call. And our discussion has really been on a completely different issue. And I understand that, Judge. I'm just saying that there are certain parts of... Well, unless you're arguing that there is enough in her statement that he came at me with a knife and I pushed his way into the bedroom and my hand was cut from which to infer a knowing placement of injury. But should that be sufficient? I think when the court considers all the evidence that the trial court had in terms of making this decision with respect to whether or not the defendant was found guilty beyond a reasonable doubt of domestic battery, I submit that it can be, Your Honor. And, Your Honor, I'd like to move on unless you guys have any other questions with respect to the sufficiency of the evidence challenge. By all means, move on. The other pieces of evidence that the defendant challenges are to be viewed by this court with respect to abuse of discretion. And the first in that is whether or not the 9-1-1 tape was properly admitted at trial. And defense counsel makes arguments that we could not identify the complaining witness, Rachel Witt, on the 9-1-1 tape. It's important for this court to note that there was no objection at trial as to the foundation of the tape. The state laid foundation with respect to the 9-1-1 dispatcher, with respect to the fact that this was kept in the ordinary course of business, to the 9-1-1 dispatcher's knowledge. This was the entire phone recording based on her recollection. There was no objection, Your Honors, to the identity of the caller because this wasn't a situation where defense counsel was fashioning defense that he wasn't there, that the defendant wasn't there. When was this objection made before the lower court? This objection was made prior to the court being allowed to hear the 9-1-1 tape being played. Why isn't that sufficient? Because it's not specific, you know. The defense attorney at trial objected that it violated the defendant's right to confront the witnesses. It was only a Crawford objection? That's correct, Your Honor. And when the court looks at the fact that in the defendant's case in chief, he's not challenging the fact that Rachel Witt was involved. Absolutely no witness by the defense says, I don't know Rachel Witt, I've never heard of her. They all testify that there had been an altercation between the defendants and Rachel Witt. There's absolutely no question. So your position is that there's a forfeiture of that issue? Absolutely, Judge. That would be the state's position. And in addition to that, defense counsel, once this was ruled on, actually was the one to provide the transcripts of the 9-1-1 tape. So even with the forfeiture, when we go to a plain error, you would concede that this was a closely balanced case? Yes. Judge, this is absolutely a situation where the... I mean, if there's ever a closely balanced case, this is it, right? With respect to the facts of this case, Your Honor? Your Honor, with all due respect to the court, it's the state's position that this was not. You have not admitted that in your brief, surprisingly. Because what else is there in this case? The court had the opportunity to hear the 9-1-1 tape, that the state's position was properly admitted at trial. They had the opportunity to hear from the officer who corroborated. Again, hearsay, no objection. Plain error. Evidence is closed. Your Honor, it's the state's position that the victim, as I said before, the statements that she made to the officer also could properly be admissible under an excited utterance exception to hearsay. And, Your Honor, if I could, I'd just like to briefly address counsel's claim that because this victim did not participate in this prosecution, that the defendant should not somehow have been found guilty of the crime that was charged. First of all, it's the state's position that this argument is waived on appeal and had not been mentioned to the trial court below. But it's important to note, Your Honor, that this case is not factually unique. There are victims that do not testify in prosecutions throughout this county, throughout this state, and throughout this country. And without taking an extreme example such as a murder or a child abuse case, there are plenty of crimes that are prosecuted where there is no quote-unquote victim, that the victim is in fact society. And it's the people of the state of Illinois that bring those charges. And it's through our power that's given to us through the legislature as well in order to do that without that cooperation. But the evidence has to be there. That's the one thing that your policy enunciation cannot bypass. That's absolutely correct, Judge. Your Honor, in this case, the state finds, and back in the trial court as well as now, that there was enough evidence to go forward and to bring the complaint, and there was finding a probable cause and ultimately a finding of guilty in this case. There was a probable cause hearing on a domestic battery? In the trial court, there is a bond hearing usually based on the complaint. It's a Gerstein hearing. That would be a Gerstein hearing, yes. Okay. So there was initially enough for them to go forward with the prosecution and then ultimately to go to trial. It's probable cause to detain. Correct. Yes, Judge. And, Your Honor, for those reasons, under People v. Costello, which we enumerated in our brief, the state can absolutely file these charges in this case. I don't know if the Court has any more questions. How about complaints being based on hearsay? All of your argument in your brief pertained to indictments and to information, but nothing actually helped us as far as the misdemeanor complaint with respect to the impact of it being totally based on hearsay. Well, Your Honor, the state complied with the statutory requirements with respect to beginning a prosecution for a misdemeanor, and that's enumerated under statutory citation 725 ILCS 5111, Section 1, and that governs how a prosecution may be commenced. With respect to a misdemeanor in which a defendant faces up to 364 days in jail, we may proceed by way of a written complaint, and the state in this case complies with the requirements under Section 720 ILCS 5, Section 2, Part 11, in that the nature of the offense is stated, that the venue is proper, and it puts the defendant effectively at notice with what he or she is charged with and the statutory citation. Is the fact that it's based on hearsay incompatible with the requirement that, what is it, 112, what is it, 199, that, I'm not sure about the citation of it, that there be verification? Can you verify a complaint when it's based on hearsay? Yes, you can, Your Honor. An officer, as it was in this case, was the person that verified the written complaint, so the state was compliant with respect to the statutory provisions with respect to commencing the prosecution. Is there anything else? No, Your Honors. For all the reasons I stated today and also my brief, people would ask the court to deny all defendants' claims on appeal and affirm his conviction of domestic battery. Thank you. Thank you. Very briefly for me, Your Honor. You may very briefly. I will adhere to that admission. There was an objection to the testimony of the police officer rattling on about what Ms. Witt reportedly told him. It's at page 13 of my brief, the record reference, page record 94. The trial judge said that the trial attorney had opened the door to allow the police officer to repeat this based on the defense attorney's cross-examination of the officer when earlier the state had offered not for the truth. Again, give me that page number again. Page 13 of the brief, Your Honor, opening brief, at the first full paragraph, there was an objection. They opened the door. I didn't make that a separate point in my brief. What was the ground raised in the objection? At the record there, it said that based on what the attorney had asked the officer. No, no, but what ground did you offer? Was it a general objection or a specific objection? It was more of a hearsay. I'm pretty sure it was clearly hearsay. It was objecting about the officer saying what the lady told him. It was hearsay or it's implicit. I don't recall if he did that, but it's my belief it was based on hearsay. All you have here is over a judge, but you don't have the grounds, actually, but the record will show that. Yes, Your Honor, at 94. And the earlier testimony, you've been fighting all day. Previous page 12, record 73. The state said they were offering that testimony not for the truth, whatever that could possibly mean. The trial attorney, I thought, and I have the page 11 of my brief, third full paragraph, I have everywhere where he objected to the case. Record 126 through 129, 206, 207, 237, 259. I thought he made a bit of a shotgun objection. I didn't think he limited it to Crawford. However, I filed a supplemental post-trial motion prior to judgment being entered in the case or within 30 days of judgment being entered, which was ruled on, at C-36, common law record, where I specifically raised the claim that the identity of the speaker was not established in the case. And it's been my great pleasure and honor, again, to be before you justices. I thank you very much for this opportunity. Thank you both. Thank you both. The briefs were well done, and the arguments were as good as could be. Thank you. We'll take the case under advice.